1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11   AIMEE HERNANDEZ,
                                    NO. 2:07-CV-1088 FCD DAD
12          Plaintiff,

13       v.                         MEMORANDUM AND ORDER

14   HARD ROCK CAFÉ INTERNATIONAL
     (USA), INC., a corporation;
15   STEWART GARNETT; and DOES I
     through XX, inclusive
16
            Defendants.
17
                           ----oo0oo----
18

19       This matter comes before the court on defendant Hard Rock

20   Café International's ("Hard Rock") motion to dismiss five of

21   plaintiff Aimee Hernandez's ("Hernandez") eight claims for relief

22   pursuant to Rule 12(b)(6) of the Federal Rules of Civil

23   Procedure.  For the reasons set forth below[1], defendants' motions

24   are DENIED.

25   ///

26   ///

27

28       [1]    Because oral argument will not be of material
     assistance, the court orders this matter submitted on the briefs.
     E.D. Cal. Local Rule 78-230(h).

1

2                                **BACKGROUND**[2]

3       Hernandez was employed by Hard Rock in its Sacramento

4   location  as a server, trainer, and rocker.  (Pls.' Compl., filed

5   June 5, 2007 ("Compl.), ¶ 4.)  Almost immediately following her

6   hiring in June 2003, Hernandez's co-worker, defendant Stewart

7   Garnett, began to make inappropriate and offensive comments to

8   Hernandez.  (Id. ¶ 16.)  Garnett's sexually explicit comments

9   escalated to unwanted touching including, but not limited to,

10  grabbing Hernandez's hand and placing it on his penis, grabbing

11  her buttocks and attempting to kiss her on the lips.  (Id. ¶ 17.)

12      In late May or early June of 2006, Hernandez and a female

13  co-worker, Jamie Evans ("Evans"), met with Hard Rock's General

14  Manager Jim Borton ("Borton") to complain about Garnett.  (Id. ¶

15  19.)  Hernandez and Evans informed Borton that Garnett's actions

16  made them uncomfortable and provided examples of his harassment.

17  (Id.)  Borton assured Hernandez and Evans he would handle the

18  situation.  (Id.)

19      Garnett continued to make unwanted advances and sexually

20  ─────────────────

21       [2]    The facts of this case are taken from plaintiffs'
    allegations in the complaint.

22       Defendant, relying on Van Buskirk v. CNN, 284 F.3d 977 (9th
    Cir. 2002), asks the court to consider extrinsic evidence in
23  support of its Motion.  (Def's. Reply Mot., filed Aug. 17, 2007
    ("Reply Mot."), at 7.)  However, in Van Buskrik, neither party
24  challenged the court's decision to review the proffered evidence.
    In this case, plaintiff objects to the court's consideration of
25  defendant's records.  Therefore, in ruling on defendant's motion
    the court will only consider the allegations set forth in the
26  complaint.  Cf. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.
    1994) (considering documents "whose authenticity no party
27  questions" on a motion to dismiss) (overruled on other grounds by
    Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.
28  2002).

                                    2

1   harass Hernandez.  (Id. ¶ 20.)  On July 4th, 2006, Garnett came

2   to Hard Rock despite not being schedule to work.  (Id.)  Garnett

3   drank at the bar and proceeded to follow both Hernandez and Evans

4   around the restaurant while they worked.  (Id.)  Hernandez

5   advised Hard Rock's Manager Steve Romero ("Romero") that

6   Garnett's actions were making her extremely uncomfortable.  (Id.)

7   Romero responded that management had already spoken with Garnett

8   and the next time something happened, Garnett would be

9   immediately fired.  (Id.)  Nonetheless, Garnett was allowed to

10  remain in the restaurant.  (Id.)

11      On or about July 12, 2006, Hernandez attempted to give

12  Borton two weeks notice of her resignation.  (Id. ¶ 21.)

13  Hernandez informed Borton she was unable to work with Garnett any

14  longer and that her resignation was in response to Hard Rock's

15  failure to resolve the situation.  (Id.)  Borton then assured

16  Hernandez that Garnett would be terminated if he continued to

17  engage in sexually harassing conduct.  (Id.)

18      Despite Borton's assurance, Garnett continued to harass

19  Hernandez while she worked.  (Id. ¶ 23.)  On one occasion he

20  whispered "Wow! I guess I get to work with all the hot girls

21  today."  (Id.)  On other occasions, Garnett persistently asked

22  Hernandez go on a date with him.  (Id.)

23      On July 27, 2006, Hernandez spoke with Hard Rock's Director

24  of Operations, Kelly Marshall.  (Id. ¶ 24.)  Marshall stated the

25  issue with Garnett had been resolved.  Hernandez then informed

26  Marshall she did not want to work with Garnett any longer, to

27  which Marshall responded that would be "impossible."  (Id.)

28  Marshall advised Hernandez her only option was to quit.  (Id.)

1 Hernandez also informed Marshall that Romero had made some

2 comments to employees about the complaint and that he had been

3 treating her rudely.  (Id.)  Marshall said she would speak with

4 Romero.  (Id.)

5      Subsequently and despite her requests to the contrary,

6 Hernandez continued to be scheduled to work with Garnett.  (Id. ¶

7 25.)  On August 11, 2006, Garnett asked Hernandez if he could

8 still "molest" her.  (Id. ¶ 27.)  Hernandez complained to Borton

9 about Garnett's statement.  (Id.)  Borton requested Hernandez

10 write down what Garnett had said, and Hernandez did so.  (Id.)

11 On or about February 5, 2007, Garnett, clearly intoxicated,

12 entered the restaurant while plaintiff was working and began

13 loudly stating "f*** those bitches" in reference to Evans and

14 others whom he believed made the complaint about him.  (Id. ¶

15 29.)

16                          **STANDARD**

17      On a motion to dismiss, the allegations of the complaint

18 must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322

19 (1972).  The court is bound to give plaintiff the benefit of

20 every reasonable inference to be drawn from the "well-pleaded"

21 allegations of the complaint.  Retail Clerks Int'l Ass'n v.

22 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

23 need not necessarily plead a particular fact if that fact is a

24 reasonable inference from facts properly alleged.  See id.

25      Nevertheless, it is inappropriate to assume that the

26 plaintiff "can prove facts which it has not alleged or that the

27 defendants have violated the . . . laws in ways that have not

28 been alleged."  Associated Gen. Contractors of Calif., Inc. v.

4

1 Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

2 Moreover, the court "need not assume the truth of legal

3 conclusions cast in the form of factual allegations." United

4 States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

5 Cir. 1986).

6      Ultimately, the court may not dismiss a complaint in which

7 the plaintiff has alleged "enough facts to state a claim to

8 relief that is plausible on its face." Bell Atlantic Corp. v.

9 Twombly, 127 S.Ct. 1955 (2007).  Only where a plaintiff has not

10 "nudged [his or her] claims across the line from conceivable to

11 plausible," is the complaint properly dismissed.  Id.  "[A] court

12 may dismiss a complaint only if it is clear that no relief could

13 be granted under any set of facts that could be proved consistent

14 with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S.

15 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69,

16 73 (1984)).

17      In ruling upon a motion to dismiss, the court may consider

18 only the complaint, any exhibits thereto, and matters which may

19 be judicially noticed pursuant to Federal Rule of Evidence 201.

20 See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th

21 Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United

22 States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

23                          **ANALYSIS**

24      Plaintiff's complaint alleges Hard Rock's conduct resulted

25 in her emotional distress, loss of employment opportunities and

26 mental anguish.  Specifically, plaintiff brings claims for (1)

27 hostile work environment under Title VII and FEHA; (2) failure to

28 prevent sexual harassment under FEHA; (3) negligent hiring,

5

1  supervision, training and retention; (4) negligence; (5) assault;

2  (6) battery; and (7) negligent infliction of emotional distress.

3  Defendant moves to dismiss plaintiff's claims for negligence,

4  negligent infliction of emotional distress and negligent hiring,

5  supervision, training, and retention as barred by California's

6  Workers Compensation Act and her claims for assault and battery

7  as failing to establish the necessary nexus to hold Hard Rock

8  vicariously liable.

9  **A.    Negligent Infliction of Emotional Distress**

10       Hard Rock contends that the exclusive remedy clause of the

11  California Workers' Compensation Act ("WCA") bars plaintiff's

12  claim of negligent infliction of emotional distress ("NIED").

13  (Mot. at 6) Plaintiff argues that claims for NIED are not subject

14  to the exclusivity provision of the WCA when it is premised on an

15  employer's conduct that violates fundamental public policy.

16  (Pl.'s Opp'n Mot., filed Aug. 7, 2007 ("Opp'n") at 7.)

17       Where a plaintiff's emotional distress claims result from a

18  defendant's misconduct which exceeds the normal risks of the

19  employment relationship, a plaintiff's claim is not preempted by

20  the WCA.  <u>Fretland v. County of Humboldt</u>, 69 Cal. App. 4th 1478,

21  1492 (1999); <u>see also</u> <u>Cabesuela v. Browning-Ferris Industries of</u>

22  <u>California</u>, 68 Cal. App. 4th 101, 112-13  (1998) (stating that

23  plaintiff's emotional distress claim is not barred by WCA in suit

24  alleging wrongful termination in violation of public policy).

25  Sexual harassment is a form of sex discrimination and

26  fundamentally violates determinations of state public policy.

27  <u>Lyle v. Warner Bros. Television Productions</u>, 38 Cal. 4th 264, 277

28  (2006).

1     In her complaint, plaintiff alleges that defendant knew or

2  should have known that plaintiff was being subject to sexual

3  harassment and that Hard Rock's failure to exercise due care in

4  preventing such harassment caused her emotional distress. (Compl.

5  ¶ 70.)  As such, plaintiff has sufficiently alleged that her NIED

6  claim is based upon Garnett's sexual harassment, conduct that

7  fundamentally violates California public policy and is thus,

8  beyond the normal risks of the employment relationship.

9  Therefore, Hernandez's NIED claim is not barred by the

10 exclusivity provision of the WCA.

11     Defendant argues that while intentional emotional distress

12 may fall outside the exclusivity provision of the WCA, a claim

13 for NIED is barred by the same.  (Def's. Reply Mot., filed Aug.

14 17, 2007 ("Reply Mot."), at 3-4.)  However, in Maynard v. City of

15 San Jose, the Ninth Circuit specifically held that a plaintiff's

16 claims of *intentional and negligent* infliction of emotional

17 distress are not preempted.  Maynard v. City of San Jose, 37 F.3d

18 1396, 1405 (9th Cir. 1994); see also Smith v. Int'l Bhd. of Elec.

19 Workers, 109 Cal. App. 4th 1637, 1658 (2003) (holding that

20 plaintiff's NIED claim was not barred by the WCA because it was

21 based on his employer's violation of fundamental public

22 policies).  Defendant argues that Maynard was incorrectly

23 decided, or alternatively that such a finding was merely dicta.

24 The court finds neither of these arguments persuasive.  In

25 Maynard, the Ninth Circuit affirmed the jury's verdict for the

26 plaintiff regarding his claim for NIED, finding that such a claim

27 was not preempted by the WCA because it arose out of conduct that

28 implicates fundamental public policies.  73 F.3d at 1405-06.

1  Contrary to defendant's assertion, the <u>Maynard</u> court's finding

2  does not "border on dicta." (Reply Mot. at 4.) As such, no

3  matter how strongly defendant contends <u>Maynard</u> was incorrectly

4  decided, the Ninth Circuit's decision is binding on this court.

5  Accordingly, Hard Rock's motion to dismiss plaintiff's eighth

6  claim for NIED is DENIED.

7  **B.    Negligence; Negligent Hiring, Supervision, Training and Retention**

8

9      Similarly, defendant argues that plaintiff's claims for

   negligence and negligent hiring, supervision, training and

10 retention are barred by the exclusivity doctrine of the WCA.

11 (Mot. at 5, 7.) Plaintiff contends an exception to the

12 exclusivity rule applies when an employee suffers injury as a

13 result of discrimination. (Opp'n, at 7.)

14     The WCA generally provides the exclusive remedy for an

15 employee's work-related injury. 2 WITSUM <u>Workers Compensation</u>

16 <u>Act</u> § 24 (2005). However, incidents where the "defendant's

17 misconduct exceeds the normal risk of the employment

18 relationship," are excepted from the exclusivity provision.

19 <u>Fretland v. County of Humboldt</u>, 69 Cal. App. 4th 1478, 1492

20 (1999) (citing <u>Livitsanos v. Superior Court</u>, 2 Cal. 4th 744, 756

21 (1992)). As such, claims of negligence are not necessarily

22 preempted by the WCA's exclusivity provision. <u>Scott v. Solano</u>

23 <u>County Health and Social Services</u>, 459 F. Supp. 2d 959, 971 (E.D.

24 Cal. 2006). "[T]he [WCA] does not bar . . . allegations of a

25 negligent response to harassment or discrimination claims because

26 these claims are based on accusations of discrimination, which

27 'is not a normal risk of the compensation bargain.'" <u>Scott</u>, 459

28

8

1   F. Supp. 2d 971 (citing <u>Fretland</u>, 69 Cal. App. 4th at 1492);

2   <u>Doerflex-Casner v. Placer County Dep't of Pub. Works</u>, 2006 U.S.

3   Dist. LEXIS 36066, 26-27 (2006); <u>see</u> <u>Maynard</u>, 37 F.3d at 1405

4   ("Personal injury claims that implicate fundamental public policy

5   considerations are not preempted by the Workers Compensation

6   Act.").

7          Plaintiff's claims for negligence and negligent hiring,

8   supervision, training and retention are based upon defendant's

9   alleged failure to fulfill its duty to prevent sexual harassment,

10  (Compl. ¶¶ 51, 55), conduct that falls outside the normal risk of

11  the compensation bargain.  Therefore, defendant's motion to

12  dismiss with respect to Plaintiff's fourth and fifth claims for

13  relief is DENIED.

14  **C.   Assault and Battery**

15         Finally, defendant argues it cannot be held vicariously

16  liable for Garnett's actions because there is no nexus between

17  his employment with defendant Hard Rock and the alleged batteries

18  he inflicted on Hernandez.  (Mot. at 8.)  Plaintiff argues that

19  Garnett's conduct was, at the very least, reasonably foreseeable

20  to Hard Rock and thus, Hard Rock should be held vicariously

21  liable for the torts committed by Garnett.  (Opp'n at 9.)

22         Vicarious liability is established when an employee acted

23  within the scope of his employment when he engaged in the

24  conduct.  <u>Farmers Ins. Group v. Santa Clara County</u>, 11 Cal. 4th

25  992, 997 (1995).  Determinations regarding scope of employment

26  are broadly construed.  <u>Id.</u> at 1004.  Furthermore, "an employer's

27  vicarious liability may extend to willful and malicious torts of

28  an employee as well as negligence. . . . [A]n employee's tortious

9

1 act may be within the scope of the employment even if it

2 contravenes an express company rule and confers no benefit to the

3 employer." Id.

4    An employer may be vicariously liable if the employee's act

5 was either required by the employer or incidental to the

6 employee's duties. Yamaguchi v. Harsmut, 106 Cal. App. 4th 472,

7 482 (2003). Alternatively, an employer may be held liable if the

8 employee's conduct was reasonably foreseeable to the employer.

9 Id.; see also Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal.

10 4th 291, 297-99 (1995). Conduct is reasonably foreseeable if the

11 incident leading to injury is an 'outgrowth' of the employment.

12 Id. at 298 (citations omitted). "A sexual tort will not be

13 considered [as reasonably foreseeable] . . . unless its

14 motivating emotions were fairly attributable to work related

15 events or conditions." Id. at 301.

16    Plaintiff alleges that, on numerous occasions, Garnett had

17 engaged in offensive conduct during the course of her employment

18 with defendant, plaintiff had reported the conduct to defendant,

19 and subsequently, such conduct continued. Plaintiff also alleges

20 that she informed defendant that she could not work with Garnett.

21 See Yamaguchi, 106 Cal. App. at 482 (noting that evidence of

22 previous work disputes and threats between co-workers that did

23 not socialize outside the work environment and threats by one co-

24 worker that he would strike plaintiff with a knife could give

25 rise to the imposition of vicarious liability upon employer for

26 the subsequent assault with a knife); cf. Lisa M., 12 Cal. 4th at

27 302 (holding that an employer was not vicariously liable for a

28 sexual tort of its employee where there was no evidence that the

10

employee's conduct was foreseeable to the employer either due to
nature of the work or prior interactions between plaintiff and
employee).  Giving the plaintiff every reasonable inference from
the allegations in her complaint, plaintiff has sufficiently
alleged that Garnett's alleged tortious conduct were casually
attributable to his employment with defendant and an outgrowth of
workplace relationships, conditions and events.  Therefore,
defendant's motion to dismiss plaintiff's claims for assault and
battery are DENIED.

                              **CONCLUSION**

     For the reasons, defendant's motion to dismiss plaintiff's
claims pursuant to Rule 12(b)(6) is DENIED.

     IT IS SO ORDERED.

DATED: September 24, 2007

                              _____
                              FRANK C. DAMRELL, JR.
                              UNITED STATES DISTRICT JUDGE

                                   11